THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERICE A.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 5150 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| LEE DUDEK, ) | |
| Acting Commissioner of ) | |
| Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

**ORDER**[3]

Before the Court is Plaintiff's Sherice A.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (Dkt. 16: Pl. Mem. in Support of Summ. J., "Pl. Mem.") and Defendant's motion and brief in support of summary judgment (Dkt. 21: Def. Mot. for Summ. J.; Dkt. 22: Def. Mem. in Support of Summ. J.: "Resp.")

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Lee Dudek for his predecessor, Michelle A. King, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On October 8, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

**I.    Procedural History**

Plaintiff applied for supplemental security income and disability insurance benefits on April 20, 2020, alleging she became unable to work on December 5, 2018. (R. 221-29.) Her date last insured was March 31, 2023. (R. 183.) Plaintiff's claims were initially denied on August 27, 2020 and on reconsideration on December 18, 2020. (R. 240, 274.) She then appeared for a telephone hearing before ALJ Deborah Giesen on September 16, 2021. (R. 202-39.) Plaintiff, who was represented by an attorney, and a vocational expert testified.

On October 28, 2021, the ALJ issued a decision finding Plaintiff not disabled, and she subsequently appealed. (R. 179.)[4] After considering the parties' briefs and evidence, the Court denies Defendant's motion for summary judgment and grants Plaintiff's motion to remand.

**II.    ALJ Decision**

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, she found that Plaintiff had not engaged in substantial gainful since her onset date. (R. 184.) The ALJ noted that there was documented evidence in the record of Plaintiff reported working, preparing taxes. (*Id.*) There are no earning statements in the record concerning this work. (R. 185.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1-7), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

The ALJ explained that given the other reasons for denying Plaintiff's claim for benefits it was not necessary to determine if she worked at the substantial gainful activity level during the claims period. (*Id.*)

At Step Two, the ALJ determined that Plaintiff had the severe impairments of migraine headaches and fibromyalgia. (*Id.*) As relevant here, the ALJ found Plaintiff's mental health impairments of depression and anxiety to be non-severe. (R. 186-187.) In making this finding, the ALJ determined that Plaintiff had mild limitations in all four of the "Paragraph B" functional areas: understanding, remembering, and applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing herself. (R. 187-88.)[5]

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 189.) Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, except "she cannot have concentrated exposure to vibrations (i.e., vibrating tools, work surfaces); is restricted to working in an environment with no more than moderate noise levels (per the Dictionary of Occupational Titles description); and is limited to work in an environment with no more light/brightness than normal indoor lighting. (*Id.*)

Based on the testimony of the vocational expert, at Step Four the ALJ found that Plaintiff was unable to perform her past work as a tax preparer. (R. 194.) At Step Five

3

the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 195.) Therefore, the ALJ found that Plaintiff was not disabled. (*Id.*)

## III. Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the

Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning

5

a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV. Analysis**

Plaintiff contends that she is unable to work primarily because of depression and migraine headaches. She argues that the ALJ erred (1) in finding that her mental impairments were nonsevere; (2) in failing to assess her need to lie down because of her migraine headaches; and (3) in evaluating her subjective symptoms. (Pl. Mem. at 2, 10, 14.) The Court addresses each argument in turn.

    **A.    Substantial Evidence Supported the ALJ's Finding that Plaintiff's Mental Impairments Were Nonsevere.**

After considering the objective and subjective evidence, the ALJ concluded that Plaintiff's mental impairments were nonsevere. Therefore, she did not include any mental health-related functional limitations in Plaintiff's residual functional capacity. Plaintiff argues that in coming to this conclusion, the ALJ ignored an entire line of evidence, namely, objective "abnormal" findings that supported her claims of a severe mental impairment. Moreover, Plaintiff contends that by ignoring this evidence, the ALJ also wrongly rejected the opinions of two state agency doctors who opined that her mental impairments were severe.

6

In finding Plaintiff had no severe mental impairments, the ALJ acknowledged that the medical record documented Plaintiff's treatment for depression with medication since before her alleged onset date. (R. 186.) The ALJ also discussed Plaintiff's hearing testimony that due to her continuing depression she did not want to shower or get out of bed, and that she rarely changed her clothes. (*Id.*) Balanced against this evidence, the ALJ noted that medical records showed Plaintiff generally responded well to treatment with medication only, she had no psychotherapy and no hospitalizations, and her overall mental health was well-controlled. (*Id.*, R. 192.) The ALJ described a number of medical records—some concerning treatment for non-mental health issues—in which Plaintiff denied depression or anxiety or had an otherwise normal mental status examination. (*Id.*) She also pointed out instances of Plaintiff denying depression and anxiety at appointments for medication maintenance related to her mental health and noted that in late January 2021, Plaintiff was performing work doing taxes. (*Id.*)

Plaintiff argues that the ALJ's recitation of the evidence ignored objective evidence that "overwhelmingly reflects" abnormalities related to her mental health. (Dkt. 25: Reply at 2.) She accuses the ALJ of "cherry picking" the record to focus only on evidence that supports her conclusion. (Pl. Mem. at 4.) It is true that scattered throughout the 1,800-page record are a few examination notes mentioning that Plaintiff exhibited symptoms such as a "depressed mood," "blunted affect," or "flat affect." (R.

7

1051, 1074, 1116.) In total, the Court counted no more than four such comments over the course of more than two years of examination and treatment records.[6] The ALJ did not specifically mention these comments. But as the ALJ noted, the vast majority of the medical records show normal mental status examinations, denial of depression or other mental health concerns, an absence of mental health treatment beyond medication, and no hospitalizations. Defendant points to medical records that show 29 findings of normal mood and affect, 16 findings of normal speech, 17 findings of normal insight and judgment, 11 findings of normal thought process, 14 findings of normal memory, and 10 findings of normal concentration and ability to follow multi-step commands. (Resp. at 6.)

While the Court will not reweigh evidence, it finds that even if the ALJ had directly acknowledged the few abnormal findings about Plaintiff's mental health, it would not have changed the ALJ's conclusion. *See, e.g., Thomas K. v. Saul*, No 20 C 2367 2020 WL 6565228 at *5 (N.D. Ill. November 9, 2020) (A few abnormal examination findings did not establish disability where the overwhelming evidence showed normal results.) Notably, the scant objective evidence Plaintiff accuses the ALJ of overlooking conforms to the ALJ's finding that Plaintiff did have a history of depression and

---

[6] Several of the citations Plaintiff lists in her Reply are duplicate records. Defendant acknowledges the comments listed above and adds another three records, including two findings of memory problems and one that found Plaintiff to have a circumstantial thought process, impaired insight, and fidgety hands. (Def. Resp. At 5.)

received treatment in the form of medication. *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010.) (ALJ does not engage in cherry-picking when he specifically addresses all the evidence Plaintiff points out.) Here, although the ALJ did not explicitly mention the few examination notes that acknowledge Plaintiff's depressed mood or flat affect, the ALJ discussed Plaintiff's allegations of waxing and waning symptoms and explained that as a whole, "the record is absent evidence to support the extensive limitations asserted." (R 186.)

      Plaintiff separately argues that the ALJ wrongly rejected the opinions of the non-examining state agency doctors who opined that Plaintiff had severe mental health impairments. Specifically, Drs. Michele Womontree, PsyD, and Jeanne Yankin, PhD, opined at the initial and reconsideration level that Plaintiff had the severe impairments of bipolar depression and generalized anxiety disorder. (R. 261-267, 280.) The doctors also concluded that Plaintiff had mild limitations in her ability to understand, remember and apply information and adapt and manage herself, and moderate limitations in her ability to interact with others and concentrate, persist, and maintain pace. (*Id.*) Moreover, Dr. Yankin additionally opined that Plaintiff was capable of performing 1-2 step tasks but may have difficulty concentrating for the duration of a normal work period. (R. 290.) The doctor also stated that Plaintiff could not work with the general public on a continuing, ongoing basis but could adapt to routine changes and pressures in the workplace. (*Id.*)

9

The ALJ found both state agency opinions not persuasive. (R. 193.) Specifically, the ALJ explained that neither opinion was stated in vocationally relevant terms. Further, the opinions were unsupported by relevant medical evidence because the doctors did not cite to any mental, health treatment records, and the evidence they did cite showed normal psychological findings. (*Id.*) In rejecting the opinions, the ALJ again pointed to Plaintiff's very limited mental health treatment beyond medication as well as her multiple documented denials of depression or anxiety and the lack of significant findings on mental status examinations. (*Id.*) Therefore, the ALJ concluded that the evidence did not support the doctors' opinions that Plaintiff had a severe mental health impairment. (*Id.*)

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors

10

of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.* An ALJ need only "minimally articulate" her reasoning for crediting or discrediting medical opinions. 27 F.4th 1273, 1276 (7th Cir. 2022).

Plaintiff argues that it was "illogical" for the ALJ and state agency doctors to look at the same evidence and come to opposite conclusions about her mental health. (R. 5.) She contends that because the doctors were experts in social security law and the ALJ had no medical training, the ALJ should have accepted the opinions' findings. (*Id.*) Plaintiff is incorrect.

The ALJ explained the reasons she found that the doctors' opinions were not supported by the medical evidence. Plaintiff essentially argues that the ALJ wrongly weighed that evidence, and the Court should therefore accept the doctors' opinions over the ALJ's findings. By that standard, a Court would have to remand every case where an ALJ weighed medical evidence differently than a medical opinion did, on the ground that the ALJ is not a doctor. Of course, this is not what the regulations require.[7] The Court finds that substantial evidence supports the ALJ's finding that the two doctors' opinions were unsupported by the medical evidence they considered.

---

[7] Plaintiff implies that the ALJ was "playing doctor" in rejecting the agency doctors' opinions. But the ALJ did not impermissibly interpret medical tests or other complex medical conditions that are properly reviewed only by a medical professional. Instead, she looked at the vast number of Plaintiff's normal examinations and denials of depression and anxiety and decided that because of them, the opinions did not have support in the medical record.

11

Plaintiff also argues the ALJ erred by not considering evidence that was consistent with the doctors' opinions. The Court acknowledges that the ALJ did not specifically discuss consistency when evaluating the opinions. The omission was harmless, however. The "consistent" evidence Plaintiff accuses the ALJ of overlooking consists of the same few abnormal examination records discussed above. Plaintiff contends that these records both supported and were consistent with the limitations in Dr. Yankin's opinion, such as her assessment of concentration difficulties and the restriction to 1-2 step tasks. She argues that if the ALJ had acknowledged the consistent medical records, she would have found the state agency opinions persuasive.

Plaintiff's argument ignores the many more medical records that are inconsistent with the doctors' opinions. Given the significant number of normal examination results, denials of mental health problems in the record, and Plaintiff's ability to prepare tax returns in January 2021,[8] the Court has great confidence that, if a remand were ordered, the ALJ would again reject the doctors' opinions, likely for the same well-supported reasons she articulated in her decision. *See Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir.

---

[8] Plaintiff argues it was error for the ALJ to consider her tax preparation work as evidence her mental impairments were not severe because she had to stop the work after only three weeks. (Pl. Mem. at 9.) But Plaintiff testified that she stopped preparing taxes because of her migraines, not problems with her mental health. It was proper for the ALJ to consider that Plaintiff had the concentration and memory needed to prepare taxes as evidence that her mental impairments were not severe.

12

2021) (error in Social Security appeal is harmless if court "can predict with great confidence what the result of remand will be").

### B. The ALJ's Assessment of Plaintiff's Migraine-Related Limitations is Not Supported by Substantial Evidence.

The ALJ accounted for Plaintiff's migraines by limiting her to jobs that did not include exposure to concentrated vibrations (such as vibrating work surfaces or tools) and limited her to work environments with no more than moderate noise and lighting levels. Plaintiff contends that the ALJ erred by not explaining how she determined these limitations and separately, by not accounting for her need to lie down for several hours every time she got a migraine. The Court agrees that the ALJ did not adequately explain how she determined Plaintiff's migraine-related limitations and therefore, remand is necessary.

The ALJ acknowledged Plaintiff's allegations about the severity of her migraines. She described Plaintiff's testimony that she had 2-3 headaches per week despite treatment with Botox injections and prescription medication. (R. 190-91.) She noted that Plaintiff also testified that the pain from her migraines was at an intensity level of 9/10. (R. 190.) She told the ALJ at the hearing that she had been hospitalized for migraine treatment although she could not provide any information about the dates or number of hospitalizations. (*Id.*) Relevant here, Plaintiff did not testify at the hearing about needing to lie down even though the ALJ questioned her at length about her migraines and their severity. (R. 220-224, 231.)

13

As an initial matter, the Court agrees that the ALJ did not err by omitting Plaintiff's alleged need to lie down from the residual functional capacity. *Gedatus v. Saul*, 994, F.3d 893, 905 (7th Cir. 2021) (It is a plaintiff's burden to present evidence in support of functional limitations that stem from her impairments.) Only two pieces of evidence mention Plaintiff's need to lie down during a migraine: the function report she completed with her application for benefits and a headache questionnaire she completed in 2021. (R. 492, 1764, 1798.) There are no treatment notes or examination findings discussing a need to lie down. Plaintiff did not testify about a need to lie down at the hearing or otherwise identify it as a functional limitation. Therefore, the Court finds no reason that the ALJ should have presumed Plaintiff needed such a limitation.

To that end, the ALJ supported with substantial evidence her finding that Plaintiff's migraines were not as severe as she alleged. The ALJ noted that despite testifying at the hearing that Botox did not reduce the intensity of her migraines, Plaintiff had reported to her neurologist only two months earlier that the intensity of her migraines was "way less" after Botox injections. (R. 191.) The ALJ also pointed out that despite Plaintiff's testimony to the contrary, the record did not show her being hospitalized for migraines. (R. 190.) Instead, there was only a single hospitalization for chest pain, tremors, and high blood pressure, during which Plaintiff also complained of a headache. (*Id.*) Moreover, the ALJ noted that despite complaining of 10/10 pain at a neurology visit, Plaintiff presented in no distress and her physical examination was

14

normal. (*Id.*) It is Plaintiff's burden to prove that she has functional limitations from her impairments. *Gedatus*, 994, F.3d at 905. She has not met this burden with respect to her allegation that her migraines were so severe they required her to lie down for hours at a time.

But the problem is that the ALJ does not adequately explain how she arrived at the limitations she *did* include in residual functional capacity to account for Plaintiff's migraines. The ALJ found that Plaintiff's migraines were a severe impairment, which meant that she had to include limitations for them in the residual functional capacity *Pamela W. v. Kijakazi*, No. 21 C 2686, 2022 WL 2967342, at *2 (N.D. Ill. July 27, 2022). But in this case, it is impossible to tell what limits the ALJ thought the migraines caused or how they affected Plaintiff's ability to perform basic work-related tasks because the ALJ did not make any specific findings on this issue. Instead, she only discussed evidence concerning the migraines' severity, not the limitations they caused.

In fact, the ALJ does not mention limitations at all other than to include them in the residual functional capacity. There is no evidence in the record concerning Plaintiff's sensitivity to light or sound or how a reduction in either one might reduce her migraine symptoms. The only mention of migraine-related limitations in the record come from the state agency opinions that limit Plaintiff to jobs that avoid concentrated exposure to noise and vibration. (R. 264, 286.) The ALJ found these opinions not persuasive. (R. 193.) She explained that "in view of treatment for migraine headaches, as well as

15

fibromyalgia" she limited Plaintiff to modified light exertion instead of the moderate exertion suggested in the opinions. (*Id.*) The difference between work at the light and medium levels of exertion relates to the amount of weight a claimant can lift and carry; it has nothing to do with environmental limitations. In deciding Plaintiff could work at the light level instead of medium, the ALJ said nothing about environmental limitations. Therefore, the Court finds that the ALJ failed to build a logical bridge from the evidence about Plaintiff's migraines to her conclusion that Plaintiff could work if she was limited to jobs with particular light, vibration, and sound restrictions.[9]

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion to remand the ALJ's decision (Dkt. 16) and denies Defendant's motion. (Dkt. 21.)

**SO ORDERED.**

                                        **ENTER:**

                                        **LAURA K. MCNALLY**

                                        **United States Magistrate Judge**

**DATED: 5/5/2025**

---

[9] Because the Court is remanding based on the ALJ's failure to support the residual functional capacity, it does not need to reach Plaintiff's argument that the ALJ's subjective symptom analysis was faulty. In any event, as explained above, the Court discussed the ALJ's consideration of the severity of Plaintiff's migraines and found the analysis was not patently wrong.